# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-25-00279-CV

**Lucius Lydick, Appellant**

**v.**

**Rebecca Herrera, Appellee**

## FROM THE 425TH JUDICIAL DISTRICT COURT OF WILLIAMSON COUNTY
## NO. 25-0015-PO425, THE HONORABLE BETSY F. LAMBETH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Lucius Lydick appeals the trial court's order denying his request for a protective order and declining to find a violation of a temporary protective order by appellee Rebecca Herrera. We will affirm the judgment.

## BACKGROUND

On January 8, 2025, Liberty Hill police officers responded to a call involving an altercation between Lydick and Herrera. Thereafter, Lydick applied for a family violence protective order, and on January 17, the trial court granted a temporary ex parte protective order that expired on February 3. The parties later agreed to, and the trial court rendered, an agreed temporary protective order extending the terms of the temporary ex parte protective order to April 1 and setting a hearing on Lydick's application for a protective order. *See* Tex. Fam. Code § 85.005. On March 27, Lydick moved to enforce the agreed order and to find Herrera in contempt.

On April 1, the trial court heard Lydick's motions and application. Lydick and Herrera were the only witnesses to testify, and Herrera represented herself.

Lydick and Herrera met on a social media app and began dating in July 2024. On January 8, 2025, they went to dinner at Chili's and returned to Lydick's residence (which is inside his automotive business) when the two, who were both intoxicated, started arguing. Herrera testified that "the fight was over a vape that he found in the pocket of the jacket that I was wearing." "He didn't think that I vaped," so "he became irate because he believed I was lying about having not vaped, that's what started the argument." Herrera began to gather her things, including her "pretty large laser engraving machine." "While I was trying to carry that out, I bumped into a cart and that's when he became extremely irate saying, '*You're going to fucking scratch the cars you stupid bitch*,' and that's when he hit me in my face." "He full on punched me in the face" with his fist. Herrera testified that she fell to her bottom and that Lydick was "trying to hold me down and pin me to the ground." "I'm actively trying to fight him off of me so it's an entire altercation." Herrera admitted that she "did hit him in the nose," but she maintained that "he hit me first and I am still to this day claiming self defense." Lydick's nose was bleeding, but "he still continued to follow me around screaming at me as I'm trying to carry this laser engraving machine out, berating me, saying things to me." Herrera could not find her phone or car keys. She and Lydick ended up outside with her car "locked with my phone inside and my keys locked inside and that's when he took off running into the shop." Lydick locked himself inside, and Herrera was "desperately crying" and "banging on the door," which injured her hands.

Lydick's testimony differed. "I asked her to leave when we got back from eating at Chili's and then she was just angry." He testified that Herrera "tried to push the cart against the car and I tried to stop that because that's a customer's car." Lydick testified that Herrera hit him

2

"many times" "in the face" and gave him "two bite marks on my chest and a bruise on my arm and legs." "I was bleeding." He said he "eventually convinced her that I'd go outside and try to help her find her keys," but "as soon as we got outside, I ran back in and shut the door real quick and it automatically locks." Lydick called the police. An audio recording of his 911 call and a bodycam video from one of the responding officers were admitted in evidence, as were photos of both parties' injuries, the agreed protective order, and screenshots from text messages and social media.

Two police officers and a sergeant arrived in response to Lydick's 911 call. The photos and bodycam video exhibits show Lydick's and Herrera's injuries. Lydick's nose appeared to have been bleeding, and Herrera's eye was swollen and red. The bodycam video also shows the officers discussing who the "aggressor" was between Lydick and Herrera. One officer noted that "he's got blood everywhere, but she's got the worse injury." In response to comments that Lydick did not have any offensive injuries on his hands, one officer noted that "one good wallop would do that" to Herrera's eye. After a brief investigation, the officers arrested Herrera but not Lydick. However, Herrera was not ultimately prosecuted for family violence, but Lydick was after Herrera was released from jail and gave her statement to police.

Lydick complained to the trial court about two violations of the agreed temporary protective order: (1) Herrera's mother sending Lydick's brother a message requesting that Lydick bring her belongings to the police station for Herrera to pick up, and (2) Herrera commenting "Not his first rodeo" on a social media post featuring Lydick's mugshot. Herrera testified that she did not ask her mother to contact Lydick's brother and had never attempted to reach out to Lydick. She agreed that she had posted "a comment on social media on Lydick's mugshot," stating "I had a lapse in judgment . . . and I deleted it after thinking about it."

3

The trial court denied Lydick's application for a protective order, as well as his motion to enforce the temporary protective order and to hold Herrera in contempt for purportedly violating the temporary protective order. After Lydick requested findings of fact and conclusions of law, the trial court issued an order finding that:

Applicant and respondent offered conflicting testimony about this incident.

The Court declines to find that family violence or dating violence has occurred.

The Court declines to find that Respondent committed an act against Applicant that was intended to result in physical harm, bodily injury, or an assault.

There was credible evidence that Applicant punched Respondent in the face with a close[d] fist, causing her to fall; that Applicant sought to hold or pin down Respondent after she fell; and that Respondent reasonably defended herself against the violence committed by Applicant.

Respondent admitted to hitting Applicant and biting his chest, but the Court finds that these were defensive measures necessary for Respondent to protect herself.

In declining to find family violence or dating violence has occurred, the Court also considered the following:

a. although Respondent was initially arrested for family violence, the County Attorney's office declined to prosecute her;

b. Respondent has maintained that her actions were defensive only and sought assistance from law enforcement to have criminal charges brought against Applicant;

c. Applicant was later criminally charged for family violence that was still pending at the time of the hearing on the protective order application; and

d. the law enforcement officers responding to the incident on January 8, 2025, debated whether Applicant or Respondent was the aggressor.

4

**DISCUSSION**

Lydick appeals on seven issues. His first four issues challenge the trial court's decision to deny his application for a protective order.[1] His fifth issue challenges the trial court's determination that Herrera did not violate the temporary protective order. His sixth issue contends that the trial court "showed a lack of judicial impartiality." And his seventh issue contends that the trial court erred by not requiring the court reporter to file a reporter's record of two post-judgment hearings at no cost to him.

I. **Sufficient evidence supports the trial court's decision to deny Lydick's application for a protective order.**

First, Lydick challenges the trial court's decision to deny his application for a protective order. We review the trial court's decision on a protective order under legal and factual sufficiency standards. *McCombs v. State ex rel. McCombs*, No. 03-24-00450-CV, 2025 WL 1910923, at *2 (Tex. App.—Austin July 10, 2025, no pet.) (mem. op.) (citing *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *B.C. v. Rhodes*, 116 S.W.3d 878, 883 (Tex. App.—Austin 2003, no pet.)). We review legal and factual sufficiency issues in a bench trial under the same standards as a jury verdict. *See id.*; *B.C.*, 116 S.W.3d at 883. When evaluating legal sufficiency, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable

---

[1] These issues are (1) "Whether the trial court reversibly erred by finding Appellee's assault on Appellant was self-defense against the great weight of evidence where Appellee's testimony was self-contradicting and insufficient to explain her claim of self-defense and where Appellee's testimony contradicted the physical evidence that did not support a finding of self-defense"; (2) "Whether the trial court reversibly erred by relying on and confusing the evidence of the law enforcement officers' 'debate' to indicate self-defense instead of mutual assault"; (3) "Whether the trial court reversibly erred by relying on the county attorney's prosecutorial discretion not to prosecute Appellee to establish a finding in a civil claim"; and (4) "Whether the trial court reversibly erred by relying on the county attorney's prosecutorial discretion to prosecute Appellant to establish a finding in a civil claim."

inference in that party's favor and disregarding contrary evidence unless a reasonable factfinder could not disregard it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "[L]ooking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). To challenge factual sufficiency, the appellant must show either that the evidence was too weak to support the finding or that the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Sunbeam Env't Servs., Inc. v. Texas Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 850 (Tex. App.—Austin 2002, no pet.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)); *see Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). For factual sufficiency, we consider and weigh all the evidence, both for and against the finding under attack. *See id.*

A trial court shall render a protective order if it finds that family violence has occurred. *See* Tex. Fam. Code §§ 81.001, 85.001. "Family violence" for these purposes includes:

> an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

*Id.* § 71.004(1).

Evidence at trial included Herrera's testimony that Lydick "full on punched me in the face" with his fist; that, after she fell to the ground, that Lydick was "trying to hold me down and pin me to the ground"; that she was "actively trying to fight him off of me"; that she "did hit him in the nose" but in "self defense"; and that Lydick "continued to follow me around screaming

6

at me . . . , berating me, saying things to me." The bodycam video also showed that both Lydick and Herrera were injured, with one responding officer noting that "she's got the worse injury."

Lydick argues that Herrera's testimony was "self-contradicting and insufficient to support a claim for self-defense" and "contradicts the physical evidence." In addition to the evidence discussed above, Lydick also points to the lack of injuries on his hands and the injuries on Herrera's hands. But Herrera testified that after Lydick locked her outside, she was "desperately crying" and "banging on the door," which injured her hands. And given the nature of Herrera's injury to her eye, as one officer noted on the bodycam video, just "one good wallop would do that." Lydick also notes that Herrera could be seen "heavily swaying" in the bodycam video and contests her testimony that she did not trip and fall on the cart. And he disputes whether the officers truly "debated" who was the "aggressor," instead contending that the officers were "determining whether the assault was mutual" or whether Herrera was the "primary aggressor."

However, the trial court, as the factfinder here, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and we cannot substitute our judgment for that of the trial court. *B.C.*, 116 S.W.3d at 884. Because Lydick's and Herrera's accounts of the dispute varied, this case largely turned on the trial court's judgment of the witnesses' credibility and the weight to give their testimony, combined with the exhibits. *See Kazmi v. Kazmi*, 693 S.W.3d 556, 566 (Tex. App.—Austin 2023, pet. denied). The evidence is legally sufficient to support the trial court's finding that Herrera did not commit an act of family violence. Viewed in the light most favorable to the judgment, some evidence supports a reasonable conclusion that Herrera's actions were "defensive measures to protect [her]self" and thus did not constitute family violence. *See B.C.*, 116 S.W.3d at 884; *City of Keller*, 168 S.W.3d at 827. And viewing all the evidence under a factual-sufficiency standard, the trial court's finding is not so

7

against the overwhelming weight of the evidence as to be manifestly unjust. *See Cain*, 709 S.W.2d at 176.

Lydick also complains that the trial court's findings of fact include the county attorney's decision not to prosecute Herrera and to prosecute him for family violence. If we were to assume that this finding was improper, Lydick's argument on this point is nonetheless insufficient to establish reversible error on appeal. Even without this finding, the trial court's decision to deny the application for a protective order is supported by sufficient evidence described above. *See* Tex R. App. P. 44.1(a); *In re C.J.B.*, 681 S.W.3d 778, 785 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) (citing *Dyer v. Texas Comm'n on Env't Quality*, 646 S.W.3d 498, 514 (Tex. 2022)). That is, even if we agreed with Lydick's argument on this point, the alleged error did not probably caused the rendition of an improper judgment or probably prevent him from properly presenting the case to this Court. *See* Tex. R. App. P. 44.1(a).

We overrule Lydick's first, second, third, and fourth issues.

## II. The trial court did not abuse its discretion by determining that Herrera did not violate the temporary protective order.

Next, Lydick contends that the trial court erred by finding that Herrera did not violate the temporary agreed protective order, pointing to Herrera's admission that she posted a comment on a social media post featuring Lydick's mugshot stating, "Not his first rodeo."[2] The trial court admitted into evidence a screenshot of the post with comments, including Herrera's, and Lydick argues that the trial court should have issued a protective order based on this evidence.

---

[2] Lydick does not contend on appeal that Herrera's mother's text message to his brother violated the agreed temporary protective order.

The procedure for rendering a protective order for the commission of acts in violation of an existing protective order is set forth in section 85.002 of the Family Code:

> If the court finds that a respondent violated a protective order by committing an act prohibited by the order as provided by Section 85.022, that the order was in effect at the time of the violation, and that the order has expired after the date that the violation occurred, the court, without the necessity of making the findings described by Section 85.001(a), shall render a protective order as provided by Section 85.022 applying only to the respondent and may render a protective order as provided by Section 85.021.

Tex. Fam. Code § 85.002. Lydick argues that Herrera violated the agreed temporary protective order, which was effective from January 30, 2025, to April 1, 2025, that ordered her not to "communicate in a threatening or harassing manner, directly or indirectly, with a person protected by this Order or a member of the family or household of a person protected by this Order" and "engage in conduct that is directed specifically toward and reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass a person protected by this Order."

However, as the trial court stated on the record when ruling on Lydick's application and motions, there was no evidence in the record establishing when the exhibit featuring the social media post and comments were made or when Herrera was aware that the trial court had entered the agreed temporary protective order. Lydick argues that his arrest was on February 8 and that the parties had agreed to the protective order to be in effect beginning on January 30. But he does not point to any evidence demonstrating when the exhibit was created or indicating that Herrera knew the court had entered the agreed temporary protective order.

Further, viewing the evidence under the applicable legal and factual sufficiency standards of review, the trial court could have found on this record that Herrera did not violate the terms of the agreed temporary protective order. In other words, a reasonable factfinder could have

concluded that Herrera commenting "Not his first rodeo"—which she later deleted—on a social media page featuring Lydick's mugshot was not "communicat[ing] in a threatening or harassing manner, directly or indirectly, with a person protected by this Order" or "engag[ing] in conduct that is directed specifically toward and reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass a person protected by this Order."

We overrule Lydick's fifth issue.

## III. Lydick's "judicial impartiality" argument fails.

Lydick also maintains that the trial court "showed a lack of judicial impartiality" and "proceeded to improperly raise and litigate its own evidentiary objections" on Herrera's behalf. In his brief, Lydick includes exchanges between the trial court and his counsel that he contends establish "evidentiary impartiality" for his proffered exhibits when compared to its "quick and inconsistent" admission of exhibits offered by Herrera, who represented herself. However, Lydick does not raise any evidentiary issues on appeal or argue that any of the "objections" the trial court raised probably caused the rendition of an improper judgment or probably prevented him from properly presenting the case to this Court. *See* Tex. R. App. P. 44.1(a).

In support of his position that he can "raise the issue of a lack of judicial impartiality on appeal for the first time in a civil case when the conduct is so egregious as to deem the judge biased," Lydick cites to a case in which the Corpus Christi–Edinburg court of appeals found the trial court's conduct "egregious enough to be considered biased, thereby depriving appellant of a fair trial." *Marriage of Bryant*, 715 S.W.3d 451, 468 (Tex. App.—Corpus Christi–Edinburg 2025, no pet.). However, our sister court noted that "[b]ias rises to this level when coming from an

10

extrajudicial source, as it did in this matter," noting the trial judge's "predeterminations about the outcome of the CPS investigation, comments about [appellant's] personal gun ownership, and statements on [appellant] not yet being charged with a stalking offense," which "all arise from an extrajudicial source, and not the facts adduced at trial." *Id.* Likewise, in the context of an administrative-proceeding review, this Court has stated that "[a] decisionmaker exhibits impermissible bias when '[t]he bias . . . come[s] from an extrajudicial source and result[s] in an opinion on the merits of the case other than what the judge learned from participating in the case.'" *Office of Pub. Util. Couns. v. Public Util. Comm'n of Tex.*, 185 S.W.3d 555, 574 (Tex. App.—Austin 2006, pet. denied) (quoting *Rosas v. State*, 76 S.W.3d 771, 774 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). An appellant claiming any such alleged bias "must also demonstrate that the alleged bias denied them due process." *Id.*; *see id.* ("We presume that decision makers are fair and unbiased."); *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994))).

Lydick has not attempted to establish any "judicial bias" arising from an extrajudicial source in this case, nor has he demonstrated that the bias he alleges denied him due process in the trial court. *See Office of Pub. Util. Couns.*, 185 S.W.3d at 574.

We overrule Lydick's sixth issue.

11

**IV.** **We do not need to reach whether Lydick is entitled to a free reporter's record of two post-judgment hearings.**

Finally, Lydick argues that the trial court erred by not requiring the court reporter to provide him with a free record of two hearings on his motions for new trial and to reform the judgment. He relies on Family Code section 81.002, which states:

> An applicant for a protective order or an attorney representing an applicant may not be assessed a fee, cost, charge, or expense by a district or county clerk of the court or a sheriff, constable, or other public official or employee in connection with the filing, serving, or entering of a protective order or for any other service described by this subsection, including . . . a court reporter fee[.]

Tex. Fam. Code § 81.002.

In this case, the appellate record contains the reporter's record of the April 1 hearing on Lydick's application for the protective order. But Lydick, who has not filed an affidavit of inability to pay for the record, insists that he is entitled to a free record from the trial court's hearings on his post-judgment motions on November 25 and December 18. Lydick contends that these records are "necessary" for this Court to consider because at the November 25 hearing, he "presented argument highlighting the judicial bias at the protective order hearing for which Judge Lambeth voluntarily recused herself from the case."

However, Lydick's argument about purported bias stems from the hearing on his protective-order application. Thus, our review of whether the bias arose from an extrajudicial source or rose to such an extent as to deny him due process in the trial court relies on the record from the protective-order hearing, not from a hearing on his post-judgment motions. Under these circumstances, a reporter's record to demonstrate that Lydick "presented argument" on this issue is unnecessary for the Court to resolve his "judicial impartiality" issue on appeal. *See* Tex. R. App. P. 34.1 ("The appellate record consists of the clerk's record and, *if necessary to the appeal,*

12

the reporter's record." (emphasis added)); *Estate of Nunu*, 542 S.W.3d 67, 74 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (noting that party need not request reporter's record unless necessary to appeal and appellate court can decide appeal based on briefs and clerk's record). Because a reporter's record from the hearings on Lydick's post-judgment motions is unnecessary to the resolution of this appeal, we do not need to reach Lydick's argument regarding whether he is entitled to these records for free under Section 81.002. *See* Tex. R. App. P. 37.3(c)(2), 47.1.

We overrule Lydick's seventh issue.

## CONCLUSION

Having overruled all Lydick's issues on appeal, we affirm the judgment.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Affirmed

Filed:   July 3, 2026

13